May it please the court, Mr. Luerbein. Your honors, my name is Phil Scanlon and I represent the appellant Oscar Henry Steinmetz. For what it's worth, four years ago when I was a 3L in law school, I didn't think I would get this opportunity this soon, so pleased to argue that the court must grant Mr. Steinmetz's appeal and remand the case back to the district court level with the exclusion of certain evidence. And the issues presented, your honors, are one, that Mr. Steinmetz's consent to search his house was given involuntarily. Number two, that even if this court found that Mr. Steinmetz did give voluntary consent, the consent was limited and predicated on his being present at the search. Number three, I will address that the admission of certain evidence under Rule 404B and 414 was extremely outweighed by its prejudicial effect. And four, I will discuss the restrictions on the cause of the emanation of the complaining witness, FM, and I intend on spending the majority of the time on the first two issues. In regards to the issue of the voluntariness of the consent, U.S. Supreme Court law states that consent is involuntary when assessing the totality of the circumstances, and in that determination, if the circumstances present an individual whose will was overborn or his self-determination critically impaired, then the consent is involuntary. And courts look at a variety of factors, such as whether the individual who gave the consent was informed as the right to refuse, the age and intelligence of the consenter, the length and location of the interrogation, promises or misrepresentations made to the consenter, whether the individual objected or passively looked upon the search, and whether there were force or threats involved. And in the brief, I cited United States v. Thompson, which quotes the 5th and 11th Circuit, wherein the courts found that blocking an Here, what we have is we have Mr. Steinmetz, who was informed of the accusations weeks prior to him being apprehended by officers. And on the day of the interrogation, we have Mr. Steinmetz, somebody who has no experience with interrogations and very limited experience, and he was a man who is elderly, approached by officers at his place of employment by two armed, uniformed officers. And of significance, Your Honors, immediately after the officers note that he is a suspect of an accusation, he asked to retrieve a personal belonging and the one officer involved restrained his movement and made sure that he couldn't go away. And I think that is, that's definitely of significance in that, at the outset, upon meeting these officers, he's immediately restrained and patted down. Then he goes down to the Maryland Heights Police Station, and during the eight-hour interrogation that ensued, which occurred in a 70-square-foot room that was windowless and locked, he first asked one detective... Did Mr. Steinmetz know it was locked? Judge Arnold, based on the record, the detective testified that it was locked. I cannot comment onto whether or not Mr. Steinmetz knew it was locked, but I believe it could be inferred. Well, I think the tape may show that he never got up to try the door. That is true, Your Honor, and on that note, I think it goes to the fact that Mr. Steinmetz, from the outset, being patted down, being restrained, being approached by officers, knowing of the accusations, didn't feel like he had any authority to try to get out. So it wouldn't matter whether it was locked or not, though, but your case is that he felt so confined and restrained, just by being in the room, that that's really the basis of your case, isn't it? Correct, Your Honor, and it goes a little deeper than that, and we need to look at it from the shoes of Mr. Steinmetz, who, once again, is met at his place of work. Any reasonable person who may be around colleagues and is approached by two armed officers would obviously want to remove himself from that situation when surrounded, when in the presence of, or possible presence of, colleagues, and to reiterate, he is then immediately restrained and his movement is limited. He's taken to the station. He's in this locked room, and at the very beginning of the interrogation, based on the testimony of the suppression, of the suppression hearing, he asked Detective House, will I be released? To which she replies, it's not, it's not my call. She read him his Miranda Rights, correct? She did, Your Honor, and... All right. Go ahead. I just think you might want to get to your arguments about whether the search exceeded the scope of the consent. I understand you want to say there's no consent at all. I think that's the point you're making now, that you think there was no valid consent at all because of the circumstances, so if you want to finish up on that, that'd be fine, but I think it'd be helpful if you also address the the argument is that even if you found that the consent was voluntary, it doesn't change the fact that the consent was, in fact, limited, and Your Honors, the overarching rule of law is noted in Gimeno, where the court found that officers' authority is dictated by the express or implicit consent that is given, and in Gimeno, there was a traffic stop. Well, how do you say it was exceeded here? Judge, it was exceeded because at the outset, when he was asked to consent, and in the same breath of him signing the first consent form, he tells Detective House, well, I'd like to be there if I could. Right. Okay, now the judge says, well, they told him later he couldn't be there, and he never withdrew the consent, and he signed a second form about the computers. That's correct, Your Honor. Why isn't that sufficient to show that although he wanted to be there, he continued to consent even after they told him he can't go? And Judge, that goes directly and kind of interrelates to the allegations of misrepresentations, because in the second form, that conversation between Mr. Steinmetz and the officers, after numerous times saying, I would like to be present, he's told by that you'll just get in the way. But, Mr. Steinmetz, I'm here to tell you that the search will be minimal, and I'm going to personally supervise the search. Minutes after he informed Mr. Steinmetz of that, which obviously would lead Mr. Steinmetz to believe, okay, the search hasn't happened because he's still here with me. He told me he would supervise the search. He then, the officer, Sergeant White, then the search has been completed. Okay, so was the consent contingent on White conducting it or being present? The argument, Judge, is that based on the law, that the officer's authority is dictated by either the express or implied consent that's given. Number one, that the first signed consent form was signed in the same breath that Mr. Steinmetz said, well, I'd like to be there. And Detective House acknowledged the fact that she heard that, and that she gave a vague response of, okay, okay. So, it was clear that she understood that, and she testified at the suppression hearing that although she acknowledged that, she actually had no Second of all, when you go to the interchange between Mr. Steinmetz and Sergeant White, what we have is, he's finally said, well, you're not going to be there, but I'm going to be the one supervising the search, and is in the room with him, and leaves briefly and says, well, the search is over. So, number one, the officers, any reasonable officer would have known that the implied consent was predicated on his presence. And number two, how can Mr. Steinmetz object when he's told the terms of the search and who would be supervising it, while the search is already being conducted and is finished, with the same officer who said he would be supervising it, is still in the room with him. And judge, this case is very similar to Sanders, which is cited in the brief. In Sanders, we had a pat-down search, and the officer said, you know, we want to pat you down. Sanders, in that case, raised his arms, they patted his upper body, no problem, and then when they got to his pockets, he started swiping the officer's hand away. And the courts found that that was an implication, and a reasonable implication, that he objected to the search of his And then, upon giving that vague affirmation that, okay, you can do that, despite the officer's not having that... That's kind of an equivocal statement, though, isn't it? But I would like to be there, I mean, that doesn't... You need to have us believe that he was saying, or some judge believe that he was saying, but only under the condition that I be there. Well, Judge Arnold, I believe it's a little more complex than that, in that, if he gives consent and says, I'm going to give full consent, then the law says he needs to make an unequivocal statement that limits it. However, Judge, he didn't give full consent at the outset. The consent that was given was, I'll In Sanders, he said, yeah, I'll consent, and the court said that the initial consent given was that he objected and limited it to his upper body. In Sanders, he didn't make an unequivocal statement, nor was it an unequivocal act. So how do we review this finding? Is the district court judge's understanding of what those words meant, a finding of fact? And if so, in order to overturn it, we would have to believe that that finding was clearly erroneous, isn't that right? That is correct, Judge, and obviously, when applying it to... Is that the standard? It's clearly erroneous as a finding of fact, but the conclusions of law de novo. But this is a finding of fact. I would say so, Judge, I would. Would you like to save any time for rebuttal or to carry on? Either way is fine. I just want to make sure. I will, Your Honor. I see I got two minutes and three seconds, and I'll reserve the rest of the rebuttal. Thank you. Very well. Mr. Livergood, we'll hear from you. Thank you, Your Honor. May it please the court, Mr. Scanlon, my name is Rob Livergood, and I represent the United States in this matter. So I'll go right to the question asked by Judge Coleton regarding the consents and whether there's any limitation placed on the consents. And really, Judge, to figure this out and go back, you have to kind of go back to the timeline of when the defendant is in the police station in the Maryland Heights Police Department. And when he's in there, he's initially given his Miranda rights at 11 o'clock. At 12.14, the detective house, who's the only detective who's in this room with the defendant, starts saying, Hey, one of the things we like to do is to search your residence. We'd like to go into your residence. We'd like to look at your computers. And we'd like to find these images of the victim, if we could. And they'd like to look at other devices. And she goes through precisely what it is that she's looking to do in this case and what the consent entails. And she asked the defendant orally, can I do that? And the defendant says yes. So right there, the defendant has given permission for the officers to go in. There's no restriction whatsoever, then, on that consent. Then at two minutes later, at 12.18, there's a consent to search form. And in the consent to search form, the defendant is, again, he appears like he reads through the form. He gives permission to the officers to go search the residence. In the form, it says that he understands he has a right, that he doesn't have to consent to this. And he signs the form. Does that include a search of the computers? Well, Your Honor, the search of the computer was already done orally. Okay, but I'm talking about this written. In the form, it does not say you can't search the computer, but it is saying you can go search the residence. It doesn't mention the computer. So would that include, as a matter of law, would that include the computers? Well, Your Honor, I think it's a matter of, I understand where you're going, Your Honor, but I believe that because we have the oral consent that's already done. I'm just curious. I'm not sure where I'm going. I'm asking. It's not a trap. It's a question. Okay. I do believe that it would include the computers. Okay, I'm just curious. Because you could search for any evidence of the crime. I know. You have to specify, in a warrant, you have to specify the things to be searched, right? Yes. But this is not a warrant. Right. This is consent. It might be a document that's executed in the shadow of a warrant or in the shadow of the Fourth Amendment warrant requirement. So that might inform the correct interpretation of the language, the scope, whether a search of the residence includes a search of computers. I mean, certainly it would include a search of closets. Your Honor, if you took it out of this context and you put it in, so let's say you're looking at a murder case and you said, hey, can I go look at the house? And you go in the house and you start looking for guns. You start looking for things that commit the murder. I think that's the same thing that's going on here, but they're looking. I don't want to take any more of your time. Okay. And then, Your Honor, so then after that, the defendant says, after he signs the consent form, he says, I'd rather be there if I could. He doesn't say, I must be there. He doesn't say, I need to be there. This is like in the Beckman case where there's no unequivocal assertion saying that you can only do this search if I'm present. That's not what happens. And if you go through, you could tell by the course of conduct, and I guess the question is, was Detective House who testified that she believed that there was no condition that the defendant had to be there, the question is, was that a reasonable belief? And it is a reasonable belief. And the reason you look at it is not only because of the permission that was given before, but what follows afterwards. And what follows afterwards is that the defendant goes through this course of this interview. He's told on multiple occasions that they're looking to get together people to go conduct a search. He doesn't say, hey, you know, I need to be there at that point. He finds out about 328 or so in the afternoon saying that he is not going to be there. And Detective White goes in the room, and again, he's the only person in there. He gives a form, and this is a consent regarding the electronics in the case. He gives that to the defendant, and the defendant signs that form. At that time, he knows that he's not going, and he goes. And again, Mr. Scanlon said that Detective Sergeant White would be there, but it wasn't a condition that he'd be there. It wasn't a promise that he would be there. It was a statement that was made. Well, what do you mean? It was not a promise? He said, I'll be there. But he didn't say, I'll be there no matter what. And then going back a little bit further, about 4.50, the defendant is being interviewed by Sergeant White. And during that time, he says that the search is going on. And he says, so you're not going to be there. At that point, the defendant didn't say, hey, wait a minute. You need to stop. I don't want this to go on anymore because you said you're going to be there. So it's not like even the defendant took it as a promise. So what was it then, a misrepresentation? I don't think it was a misrepresentation. Did he decide not to go later, or what? He said, I would supervise the search. Right. Well, I guess, Your Honor, I think what it was is this is what he was hoping to do, but what he tells the defendant is that he decided to come here and talk to the defendant some more. So he decided not to do that and to talk to the defendant some more. And he tells that to the defendant. So, Your Honor, and then going all the way back to the very beginning of this. Did you mention the second form? Yes, Your Honor. I had a question about that. Yes. This is the one, I guess, relating more to the computers. Yes. Yeah. Now, the form says, I consent to the House and members of the RCCEEG to search the property located at or cease from the address. And then it says the property to be searched consists of blank. Correct. And then it says on the form, as we have it, see attached. And then there's an attachment that lists several computers with serial numbers and so forth. And then Steinmetz signatures at the bottom of the first page. But when he signed it, was it blank where it says see attached? Yes, Your Honor. It was blank at that point. And that testimony came out during the suppression hearing as well. The defendant was handed the form. What was he consenting to then if it says the property to be searched consists of blank and there's nothing listed? Your Honor, I think what he was consenting to is that the items that were going to be searched, well, again, going very back to the beginning, he's already consented to the search of the computers and everything. He's already consented. You mean orally? Orally, he's consented to that. So you're not relying on this form then? No, I'm not relying on the form. I'm not relying on it for the purpose of the search of the computers. I think that was given earlier. But I think what it does is this is another opportunity for the defendant to put limitations on the search and it shows the significance the defendant knows that he is not going to be present at that time and he still signs this form. It doesn't seem like a very good practice for the police department to fill in the consent form after the man's already signed it. Right. And to put C attached and attach a list of computers and make the document look like he consented to the search of those computers when really that's what they tell after the fact they did search. Your Honor, I think at the very top of the form where the address is, it says that has been seized or may be seized, I believe it's how that. . . I'm not seeing that. I mean, that would be like a warrant return if it says here's the property that was seized but this purports to be a permission to search, you know, ahead of time and here's what I consent to them searching. You can't then add the list after the search and have it be a valid consent. I take that back, Your Honor. Yes. Yeah. But anyway, you say you don't need this form in order to uphold the finding of consent because you think he already consented orally and you think the first form covers objects within the house. Yes, Your Honor. So I think he orally consented. . . I think the purpose of this form for my purposes here is to show that he is not withdrawing or limiting his consent at that point. And he's signing this. He knows. . . I mean, he could read this. He knows. . . He knows what the basis of this is. And this is not something new he had heard. He had already heard this from Detective House way back about, you know, several hours earlier. Was he told what the content of the attachment was going to be? He was told by Detective House at the very beginning what they were going to search for.  Okay, but I mean, if he wouldn't have signed this form. That was not on. . . Well, I will take it back. Detective Sergeant White did talk about computers and stuff that were going to be seized, but he was not specific about, here's the items, because they hadn't had them. But this was signed in the context of a discussion about computers? That's correct, Your Honor. Okay. And, Your Honor, the other thing to note is once he found out that Detective Sergeant White was not going there, he knew that the next step in the process was that the computers were going to be forensically analyzed. So the defendant could have said, Hey, wait a minute, I know you've got the computers, but I don't want you to do anything more with the computers. I don't want you to examine them. So when you go back, you know, the defendant had never revoked his consent, even though he had many opportunities to do so. And then, Your Honor, just regarding consent, I've laid that out in my brief regarding the factors regarding Arsenega, and I'm probably pronouncing that wrong, but it is that the defendant's, you look at the defendant's age and his mental being, and you go through this whole list. The one thing that I wanted to talk about in particular was about the length of the detention. And the length of the detention, Your Honor, is really what you're looking at is when he's first talked about the consent to search is about an hour and 14 minutes into this. So it's not like the police are wearing him down trying to get him consent, although there's multiple consents over the time period of that. Now, Your Honor, Mr. Scanlon also told the court at the beginning that he was going to talk about two other topics, and that was the judges. Yeah, he didn't get to those, but we have his brief on that, and we have yours. I have a question, if I may, on the assertion that these videos and other evidence were introduced in a way that made them unfairly prejudicial. We have cases that say that, well, in order to prevail on that kind of point, the party has to make something called a preliminary showing of unfair prejudice or unfairness. Is that right? Is that what the cases say? Your Honor, I believe that's the case, but I think what the— What does that mean? I think what Your Honor—this is what—we had a discussion with Judge Sipple about this. And what we were talking about is—and what the case law does say is that there is prejudice. There's no question or else the government would not be trying to introduce this. That's why I'm focusing on—it has to be unfairly prejudicial. Yes. But more narrowly than that, my question has to do is, what is this business about some sort of preliminary showing of unfairness that our cases talk about? Your Honor, I can say that the defendant did not make a— How do you make one of those? Preliminary to what? And what's showing? Does that mean evidence or argument? What does that mean? I mean, it's not your fault if you don't know because I don't know either. I do not know, Your Honor, but I would— I'm hoping to get some help. I'm serious. I don't know. I do not know the answer to that. I would be speculating. All right, fine. I thank you for that. Okay. If there are no more questions, Your Honor, thank you very much. All right. Thank you for your argument. Mr. Scanlon, would you like to address Judge Arnold's question? Do you know the answer to that? No? Judge Arnold, you're in a better position than I am to answer that. Thank you. To quickly sum up, the only statement that we'd like to make in regards to issue number three is that we have the charge, we have a witness that will testify to the charge, and effectually the admission of all this miscellaneous pictures and information amounts to the jury thinking, well, even if I don't believe her, he's got all this other perverted stuff on the computer, must be guilty. But I'll let the—we'll stand on the brief as to issues three and four. But I'd like to go back to Judge Carlton's assertion that it's not great practice to oral consent, which differs from the forms. No, that wasn't precisely what I said. I said it wasn't great practice to have the man sign a consent form with a blank in it and then fill in the blank after he's already signed it. That's a different point. And our argument, Judge, is that he doesn't even know what he's consenting to. The discussion about various computers and whatnot was two hours and 20—three hours and 24 minutes prior to Mr. Steinmetz being given this blank form, which it's clear that he doesn't know what he's consenting to, what he's not consenting to. And I stand on the— Otherwise, I thought they talked to him about searching the computers and he gave oral consent to that and then he signed a consent form to search the residence where the computers were located. And then— Why is that so unclear? And then subsequently he's given a form, a consent form, that's blank. Well, no, it still says, I consent to search property located at the house. It just then goes on to say the property consists of blank and that part was not filled in. But it did—it did consent to search property located at the house. Your Honors, I stand on the policy rationale side in the argument, which would essentially be a prophylactic, as Miranda is in the Fifth Amendment, a prophylactic for the Fourth Amendment purposes. And I'll stand on the brief and, if possible, may I briefly conclude? You may, briefly. Your Honors, this court, based on the record, must grant the appeal, remand this case back to the trial level. I thank you for your time and attention. Thank you very much for your argument, Mr. Scanlon. Thank you to both counsel for your presentations. The case is submitted. The court will file an opinion in due course.